Azar Mouzari, SBN 263461
Nilofar Nouri, SBN 311871
**BEVERLY HILLS TRIAL ATTORNEYS, P.C.**
468 N. Camden Drive, Suite 238
Beverly Hills, California 90210
Tel:  310-858-5567  Fax: 424-286-0963
Email: azar@bhtrialattorneys.com
Email: nilofar@bhtrialattorneys.com

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONNEL COREY KENDALL, an individual; MARALE KURKEYERIAN, an individual; A.F. and N.F., minors through their guardian ad litem MARALE KURKEYERIAN; JOSE FIGUEROA, an individual; HAIDEH DANESHNIA, an individual; ASSAL MIRZA MOHAMMADI, an individual; NASRIN KHODADADIAN, an individual, and on behalf of all others similarly situated, | Case No.: **COMPLAINT FOR DAMAGES** **[CLASS ACTION]** **(1) STRICT PRODUCTS LIABILITY – FAILURE TO WARN** **(2) BREACH OF EXPRESS WARRANTY** **(3) BREACH OF IMPLIED WARRANTY** **(4) FRAUDULENT CONCEALMENT** **(5) NEGLIGENT MISREPRESENTATION** |
| Plaintiffs, | |
| vs. | **(6) VIOLATIONS OF THE BUSINESS & PROFESSIONS CODE SECTIONS 17200 ET SEQ. ("UCL")** |
| THE PROCTER & GAMBLE COMPANY, an Ohio Corporation, | **(7) VIOLATION OF CALIFORNIA CONSUMER LEGAL REMEDIES ACT, CAL. CIV. CODE SECTION 1770, *et seq.* ("CLRA")** |
| Defendant. | **(8) UNJUST ENRICHMENT** |

# **TABLE OF CONTENTS**

TABLE OF CONTENTS…………………………………………….......…….....2

INTRODUCTION………………………………………………………………...3

PARTIES………………………………………………………………….……....4

      I.    Plaintiffs………………………………………………….……..4

      II.   Defendant………………………………………………………..6

JURISDICTION AND VENUE……………………………………………………6

CLASS ACTION ALLEGATIONS………………………….……..……………..7

FACTUAL ALLEGATIONS……………………………………………...……..11

CAUSES OF ACTION…………………………………………………………...17

      COUNT I: STRICT PRODUCTS LIABILITY (FAILURE TO WARN)…………17

      COUNT II: BREACH OF EXPRESS WARRANTY…………………..…………21

      COUNT III: BREACH OF IMPLIED WARRANTY………………....…..……….22

      COUNT IV: FRAUDULENT CONCEALMENT.………………………………...24

      COUNT V: NEGLIGENT MISREPRESENTATION…………………………….25

      COUNT VI: VIOLATIONS OF THE BUSINESS & PROFESSIONS CODE
      SECTIONS 17200 ET SEQ. ("UCL")…………………………………………….27

      COUNT VII: VIOLATION OF CALIFORNIA CONSUMER LEGAL
      REMEDIES ACT, CAL. CIV. CODE SECTION 1770, *et seq.* ("CLRA")…………31

      COUNT VIII: UNJUST ENRICHMENT…………………………..………..33

PRAYER FOR RELIEF………………………………………..…………………34

JURY TRIAL DEMAND………………………………………………………35

COME NOW Plaintiffs DONNEL COREY KENDALL, an individual, MARALE KURKEYERIAN, an individual, A.F. and N.F., minors through their guardian ad litem MARALE KURKEYERIAN, JOSE FIGUEROA, an individual, HAIDEH DANESHNIA, an individual, ASSAL MIRZA MOHAMMADI, an individual, NASRIN KHODADADIAN, and on behalf of all others similarly situated (collectively "Plaintiffs"), and through their counsel of record, Beverly Hills Trial Attorneys, P.C., file this class action complaint against THE PROCTER & GAMBLE COMPANY ("P&G Company") ( "Defendant"), seeking damages and relief on behalf of themselves and for all others similarly situated for: Strict products liability (failure to warn), breach of express warranty, breach of implied warranty, fraudulent concealment, negligent misrepresentation, violation of California's Unfair Competition Law - *Business & Professions Code* sections 17200, *et seq*. ("UCL"), California's Consumer Legal Remedies Act - *Civil Code* sections 1750, *et seq*. ("CLRA"), unjust enrichment, and related claims as stated herein as below.  Unless explicitly stated to the contrary, all allegations are based upon information and belief.

## **INTRODUCTION**

This is a class action lawsuit by Plaintiffs, and all others similarly situated, who purchased certain aerosol antiperspirant sprays as well as aerosol dry shampoo sprays (collectively "Aerosol Products") manufactured, sold and distributed by Defendant The P&G Company. Defendant distributes, markets and sells several over-the- counter aerosol antiperspirant products sold under the brand names "Old Spice" and "Secret" (the "Aerosol Antiperspirant Products"), as well as aerosol dry shampoo sprays and dry conditioners sprays under the brand names "Aussie" and "Pantene" (the "Aerosol Dry Shampoo and Conditioner Products").  Each of these Products is manufactured, distributed, and sold by P&G Company to consumers across the United States, both in retail establishments and online.

Several of Defendant's Aerosol Products, sold under the brand names identified above, have been independently tested and shown to be contaminated with benzene, a known human carcinogen. The presence of benzene was never disclosed by Defendant on its products' labels, packaging, ingredients list, nor through its marketing/advertising, and at no time during their purchase and use of these Aerosol Products were Plaintiffs aware that Defendant's claims with regards to the safety of its Products were false and misleading, and that these products actually contained toxic levels of the chemical benzene.

## PARTIES

### PLAINTIFFS

1.     Plaintiffs are, and at all times relevant here, have been citizens of the state of California. Additionally, unnamed Class Plaintiffs, are, and at all times relevant herein, were residents of the State of California.

2.     Plaintiffs purchased and used the following Aerosol Products under the various brand names owned by Defendant P&G Company:

- Old Spice High Endurance AP Spray Pure Sport, 12/6 oz. – UPC 012044001912
- Old Spice Hardest Working Collection Inv Spray Stronger Swagger 3.8 oz. – UPC 012044044759
- Old Spice Hardest Working Collection Inv Spray Pure Sport Plus 12/3.8 oz. – UPC 037000729747
- Old Spice Hardest Working Collection Inv Spray Stronger Swagger 12/3.8 oz. - 037000730347
- Pantene Dry Shampoo No Water Refresh, 4.9 oz. – UPC 80878177042
- Pantene Dry Shampoo Sheer Volume, 4.9 oz. – UPC 80878185276
- Aussie Tousle Hustle Dry Shampoo, 4.9 oz. – UPC 381519187285
- Aussie Bounce Back Dry Shampoo, 4.9 oz. – UPC 381519187278
- Aussie After Hours Dry Shampoo Texture Spray, 4.9 oz. – UPC 381519187834
- Secret Fresh Collection Spray Waterlily 12/3.8 oz. – UPC 037000729914
- Secret Fresh Collection Spray Lavender 12/3.8 oz. – UPC 037000729860
- Secret Fresh Collection Spray Rose 12/3.8 oz. – UPC 037000798842
- Secret Aerosol Powder Fresh – UPC 037000711094

3.      On numerous occasions, Plaintiffs purchased these Aerosol Products from various stores including Target, Walmart, CVS, Walgreens and Rite-Aid and were exposed during the following timeframes:  Plaintiff DONNEL COREY KENDALL was exposed to the Old Spice aerosol sprays abovementioned at least from 2016 to 2021; Plaintiff MARALE KURKEYERIAN was exposed to the Pantene aerosol dry shampoo sprays abovementioned from at least 2019 to 2021; Plaintiff JOSE FIGUEROA was exposed to the Old Spice aerosol sprays abovementioned at least from 2017 to 2021; Plaintiff A.F., a minor, was exposed to the Old Spice aerosol sprays abovementioned at least from 2017 to 2021; Plaintiff N.F., a minor, was exposed to the Pantene aerosol dry shampoo sprays abovementioned from at least 2019 to 2021; Plaintiff HAIDEH DANESHNIA was exposed to the Secret aerosol sprays abovementioned and the Aussie aerosol dry shampoo sprays abovementioned from at least 2017 to 2021; Plaintiff ASSAL MIRZA MOHAMMADI was exposed to the Secret aerosol sprays abovementioned and the Aussie aerosol dry shampoo sprays abovementioned from at least 2017 to 2019; and NASRIN KHODADADIAN was exposed to the Secret aerosol sprays abovementioned from at least 2017 to 2019.

4.      All of these products were purchased and used by Plaintiffs because they believed these products were safe to use and apply to their bodies based on Defendant's labeling, packaging, ingredients list, and product marketing/advertising.  At no time during their purchase and use of these Aerosol Products were Plaintiffs aware that Defendant's claims with regards to the safety of its Products were false and misleading, and that these products actually contained toxic levels of the chemical benzene.

5.      Plaintiffs would not have purchased these Aerosol Products, at times paying premium prices, nor would have used and applied them to their bodies had they known that these products were unsafe and contained significant amounts of benzene.

**DEFENDANT**

6.      Defendant The Procter & Gamble Company is a corporation incorporated in the State of Ohio.  Defendant is one of the world's leading manufacturers of personal care products, and manufactures, sells, markets, and distributes its Aerosol Antiperspirant Products as well as its Aerosol Dry Shampoo and Conditioner Products across the United States, both in retail establishments and online.

7.      At relevant times, Defendant conducted regular and sustained business and engaged in substantial commerce and business activity in the State of California, which included but was not limited to selling, marketing and distributing its Aerosol Products in the State of California and Los Angeles County.

8.      At all relevant times, Defendant expected or should have expected that its acts would have consequences within the United States of America including the State of California and including Los Angeles County, as Defendant derived substantial revenue therefrom.

## JURISDICTION AND VENUE

9.      This Court has original jurisdiction of this Action pursuant to the Class Action Fairness Act, 28 *United States Code* § 1332(d)(2)(A).  The matter in controversy, exclusive of interest, costs and fees, exceeds the sum or value of $5,000,000, and is a class action in which at least one of the members of the proposed Class has a different citizenship from Defendant P&G Company.

10.     The Central District of California has personal jurisdiction over Defendant P&G Company because Defendant is a corporation or other business entity authorized to conduct, and does conduct business in the State of California.  The P&G Company is registered with the California Secretary of State to do sufficient business with sufficient minimum contacts in California, and/or otherwise intentionally avails itself of the California market through its

*PLAINTIFFS' COMPLAINT*
*[CLASS-ACTION]*

promotion, sales, distribution and marketing within the State to render the exercise of jurisdiction by this Court permissible.

11.     Venue is proper in this Court under 28 *U.S.C.* § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims occurred in this judicial district.

## CLASS ACTION ALLEGATIONS

12.     As further stated herein as to the following claims, Plaintiffs bring their causes of action on behalf of themselves and all others similarly situated, and certification of this class action is appropriate under California *Code of Civil Procedure* section 382 and California *Civil Code* section 1781, because the questions of law or fact common to the respective Class members predominate over questions of law or fact affecting only individual members.

The "Class" is defined as all persons or entities who, within the State of California, from January 2017 through the present (the "Class Period"), who purchased and/or used any of the Aerosol Products identified above, specifically under the brand names Secret, Old Spice, Pantene and Aussie, from Defendant The P&G Company.

13.     Excluded from the Class are Defendant's officers, employees, agents or affiliates, and any judge who presides over this action, as well as past and present employees, officers and directors of Defendant.  Plaintiffs reserve the right to expand, limit, modify, or amend this Class definition, including the addition of one or more subclasses, in connection with their motion for class certification, or at any other time, based upon, inter alia, changing circumstances and/or new facts obtained during discovery.

A.     **Commonality**

14.     There are questions of law and fact that are common to the claims of Plaintiffs. Among these common questions are the following:

(a)  Whether Defendant's Aerosol Products contained benzene;

(b) Whether Defendant's omissions are true, or are misleading, or objectively likely to deceive a reasonable consumer;

(c) Whether the alleged conduct constitutes violations of the laws asserted;

(d) Whether Defendant engaged in false or misleading advertising;

(e) Whether Defendant was unjustly enriched as a result of its labeling, marketing, advertising, and/or selling of the Aerosol Products;

(f) Whether Plaintiffs and the Class members are entitled to damages and/or restitution;

(g) Whether Defendant's statements, concealments, and omissions regarding the Defective Aerosol Products were material, in that a reasonable consumer could consider them important in purchasing or using these Products;

(h) Whether Defendant violated California's consumer protection statutes, and if so, what remedies are available under that statute;

(i) Whether the Defective Aerosol Products were unfit for the ordinary purposes for which they were used, in violation of the implied warranty of merchantability;

(j) Whether Defendant's unlawful, unfair, and/or deceptive practices harmed Plaintiffs and the Class;

(k) Whether Defendant's conduct violates public policy.

**B.      Numerosity**

15.    The members of the Class are so numerous that separate joinder of each member is impracticable.  Plaintiffs are informed and believe that in the County of Los Angeles alone, the members of the Class would easily exceed the minimum numbers to satisfy this requirement.

**C.      Typicality**

16.     Plaintiffs' claims are typical of the claims of the Class because Plaintiffs, like the other Class Members, purchased Defendant's Aerosol Products based on the reasonable belief that they were safe for use and application to their persons. Plaintiffs, as with other Class Members, were deceived by Defendant's misrepresentations and omissions of fact.

The core issues which predominate over all the other issues in the litigation involve Defendant's unfair competition, violation of the CLRA and other violations, as discussed above. Upon information and belief, there has never been a prior lawsuit certified as a class on behalf of Plaintiffs based on the allegations in this Complaint.

**D.      Adequacy of Representation**

17.     Plaintiffs will fairly and adequately protect the interests of the Class and are committed to the vigorous prosecution of this action. They have retained competent counsel, experienced in litigation of this nature, to represent them and members of the Class.  There is no hostility between Plaintiffs and the unnamed Class members.  Plaintiffs anticipate no difficulty in the management of this litigation as a class action.

To prosecute this case, Plaintiffs have chosen the law firm of Beverly Hills Trial Attorneys, P.C., whose attorneys have represented Plaintiffs in class actions and as private attorneys general in bringing public interest actions.

**E.      Superiority**

18.     The questions of law or fact common to the claims of Plaintiffs and of each Class member predominate over any questions of law or fact affecting only individual members of the Class.  All claims by named Plaintiffs and unnamed Class members are based on the same alleged "across the board" representations by Defendant and other acts constituting negligence, unfair competition under the UCL, and violation of Consumer Legal Remedies Act.

Common issues predominate when as here, liability can be determined on a class-wide basis, even when there are some individualized damages.

As a result, when determining whether common questions predominate, courts focus on the liability issue and if the liability issue is common to the class as in the case at bar, common questions are held to predominate over individual questions.

Since all claims by named Plaintiffs and unnamed Class members are based on the same alleged "across the board" failures by Defendant and other unfair competition under the UCL, the predominance requirement needed for class action treatment is satisfied.

A class action is superior to thousands of individual actions in part because of the non-exhaustive factors listed below:

    i.   Joinder of all class members would create extreme hardship and inconvenience for the affected consumers because of their immense geographical dispersion.

    ii.  It is highly unlikely that individual Plaintiffs would shoulder the burden of this vast and complex litigation as many are simply too poor or uneducated about Defendant's actions to bring separate actions;

    iii. The interests of justice will be well served by resolving the common disputes of potential class members in one forum;

    iv. Individual suits would not be cost effective.  The costs to individual Plaintiffs in a collective action are lowered through the pooling or resources and by limiting the controversy to one proceeding which efficiently resolves common issues of law and fact that arose from the same alleged activity; and

    v.  The action is manageable as a class action; individual lawsuits are not economically maintainable as individual actions.

Defendant has also acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final declaratory relief with respect to the Class as a whole.

### FACTUAL ALLEGATIONS

19.    Defendant is one of the world's leading manufacturers of personal care products, and manufactures, sells, markets, and distributes its Aerosol Antiperspirant Products as well as its Aerosol Dry Shampoo and Conditioner Products across the United States, under various brand names such as Old Spice, Secret, Pantene and Aussie.

20.    In November 2021, alarmed by the results of its tests, the independent analytical laboratory Valisure, LLC ("Valisure") filed a Citizen Petition with the Food and Drug Administration (FDA) asking the FDA to recall certain batches of Defendant's Aerosol Antiperspirant Products due to the presence of dangerously high levels of benzene detected therein, in excess of the recommended exposure limits.[1]  In support of its Citizen Petition, Valisure stated that it performed testing on aerosol antiperspirant sprays manufactured by various brands and sold by various retailers—including numerous lots of Defendant's Aerosol Antiperspirant Products.  Valisure reported that all of the tested Aerosol Antiperspirant Products sold under the brand name "Secret" contained benzene, with values ranging from 1.24 ppm to 16.2 ppm and that many of the Aerosol Antiperspirant Products sold under the brand name "Old Spice" contained benzene, with values ranging from 0.44 ppm to 17.7 ppm. Shortly thereafter, Defendant P&G Company initiated a voluntary recall of its Aerosol Antiperspirant Products "due to the presence of benzene detected."[2] For reference, the Occupational Safety and Health

---

[1] *Valisure Citizen Petition on Benzene in Body Spray Products* (Nov. 3, 2021), https://www.valisure.com/wp-content/uploads/Valisure-FDA-Citizen-Petition-on-Body-Spray-v4.0-1.pdf

[2] U.S. Food and Drug Administration, *P&G Issues Voluntary Recall of Specific Old Spice and Secret Aerosol Spray Antiperspirants and Old Spice Below Deck Aerosol Spray Products Due to*

Administration (OSHA) has set the legal airborne Permissible Exposure Limit (PEL) to benzene as 1 ppm averaged over an 8-hour work shift, and the National Institute for Occupational Safety and Health ("NIOSH") has set the recommended airborne exposure limit to 0.1 ppm averaged over a 10-hour work shift.

21.    Less than a month later, in December 2021, Defendant P&G Company issued another voluntary product recall, this time as to its aerosol dry shampoo spray products and aerosol dry conditioner spray products from Pantene, Aussie, Herbal Essences, and Waterless produced in the United States, in addition to previously discontinued aerosol dry shampoo products from Old Spice and Hair Food, due to the presence of benzene detected in these Aerosol Products.[3]

22.    Benzene is classified as a human carcinogen.  Exposure to benzene can occur by inhalation, orally, and through the skin, and it can result in cancers including leukemia and blood cancer of the bone marrow and blood disorders which can be life-threatening.  Benzene is used primarily as a solvent in the chemical and pharmaceutical industries, as a starting material and intermediate in the synthesis of numerous chemicals, and in gasoline.  The major United States source of benzene is petroleum.  The health hazards of benzene have been recognized for over one hundred years.  According to the National Toxicology Program ("NTP"), benzene is "*known*

---

*Detection of Benzene*, (Nov. 23, 2021), https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/pg-issues-voluntary-recall-specific-old-spice-and-secret-aerosol-spray-antiperspirants-and-old-spice.

[3] U.S. Food and Drug Administration, *P&G Issues Voluntary Recall of Aerosol Dry Conditioner Spray Products and Aerosol Dry Shampoo Spray Products*, (December 17, 2021), https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/pg-issues-voluntary-recall-aerosol-dry-conditioner-spray-products-and-aerosol-dry-shampoo-spray

*to be a human carcinogen* based on sufficient evidence of carcinogenicity from studies in humans."[4]

23.     Additionally, the Food and Drug Administration ("FDA") recognizes that "[b]enzene is a carcinogen that can cause cancer in humans" and classifies benzene as a "Class 1" solvent that should be "avoided."[5] FDA's Guidance for Industry states that "Solvents in Class 1 . . . should not be employed in the manufacture of drug substances, excipients, and drug products because of their unacceptable toxicities or deleterious environmental effect."[6]   Per the FDA regulations governing Defendant's Aerosol Antiperspirant Products, titled "Antiperspirant Drug Products for Over-the-Counter Human Use," there are certain acceptable active ingredients in products that are labeled as Antiperspirant.[7] Benzene is not on the FDA's list of acceptable active or inactive ingredients for Aerosol Antiperspirant Products.

24.     Despite the dangers associated with benzene, it was not until after Valisure's independent testing and filing of the Citizen Petition that Defendant P&G Company recalled its Aerosol Antiperspirant Products, and began a review of its total portfolio of aerosol products which resulted in Defendant detecting benzene in its aerosol dry shampoo spray and dry conditioner spray products as well, resulting in a second recall merely weeks after the first.

25.     Notably, benzene is not identified as an active or inactive ingredient on any of the Defendant's Aerosol Products.   Additionally, Defendant asserts in its advertising that

_____

[4] http://ntp.niehs.nih.gov/go/roc/content/profiles/benzene.pdf (emphasis added).
[5] https://www.fda.gov/media/71737/download.
[6] FDA Guidance for Industry, Q3C Impurities: Residual Solvents (6/30/2017), available at https://www.fda.gov/media/71736/download.
[7] 21 C.F.R. § 350.10.

benzene is an ingredient it does not use in any of its formulated products,[8] which is clearly a false and deceptive statement:



26.     The Defective Aerosol Products, manufactured, marketed, sold and distributed by Defendant P&G Company create a dangerous condition that gives rise to a clear, substantial, and unreasonable danger of death or personal injury.  Defendant put profits ahead of safety by continuing to sell products which contained benzene year after year, even though it knew or should have known that these Aerosol Products were defective.

27.     As a result of this misconduct, Plaintiffs and members of the proposed Class were harmed and suffered actual damages.  Plaintiffs and the Class did not receive the benefit of their bargain; rather, they purchased Aerosol Products that were of a lesser standard, grade, and quality

_____

[8] P&G, *Ingredients We Do Not Use*, https://us.pg.com/ingredients/.

than represented, and they did not receive Aerosol Products that met ordinary and reasonable consumer expectations regarding safe and effective operation.  Purchasers of these defective Aerosol Products paid more than they would have had the presence of benzene in these Products been disclosed. Plaintiffs and the Class were deprived of having safe, defect-free Aerosol Products, and Defendant unjustly benefited from its unconscionable delay in recalling its defective products, as it avoided incurring the costs associated with recalls for years.

28.    Plaintiffs and the Class also suffered damages as a result of Defendant's concealment and suppression of the facts concerning the safety, quality, and reliability of Defendant's Aerosol Products. Defendant's false representations and omissions concerning the safety and reliability of those Aerosol Products and Defendant's concealment of the known safety defect plaguing those products and its brand caused Plaintiffs and Class Members to purchase Defendant's Aerosol Products of diminished value.  Had Defendant's customers known that the Aerosol Products they were using actually contained excessive levels of a known carcinogen, Defendant's customers certainly would not have purchased those products nor would have applied them to their bodies.

29.    Additionally, Defendant wrongfully advertised its Aerosol Products without any labeling to indicate to its consumers that its products may contain benzene.  Below are some examples of Defendant's recalled Aerosol Products used by Plaintiffs, known to contain benzene, without any labeling indicating as such:

30.     P&G Company has represented that the ingredients in its Products are safe, effective and are not adulterated with benzene.  However, these representations are false, deceptive, and misleading as the Products actually contain dangerous levels of benzene. Plaintiffs and the Class have suffered injury in fact and have lost money as a result of P&G Company's unlawful sale of the Products.  P&G Company engaged in fraudulent, unfair, deceptive, misleading, and/or unlawful conduct stemming from its omissions surrounding benzene contamination affecting its Aerosol Products.

31.     Plaintiffs brings this proposed consumer class action individually and on behalf of all other members of the Class, who, from the applicable limitations period up to and including the present, purchased for use any of Defendant's benzene containing Aerosol Products.  As a result of Defendant's negligent, reckless, and/or knowingly deceptive conduct as alleged herein,

Plaintiffs were injured when they paid the purchase price or a price premium for Defendant's Aerosol Products that did not deliver what they promised. They paid the purchase price on the assumption that the labeling of these Products were accurate and that they was free of toxic ingredients such as benzene. Plaintiffs would not have paid this money or used these products had they known the truth that Defendant's products contained benzene.

## FIRST CAUSE OF ACTION
### (Strict Products Liability – Failure To Warn)

32.     Plaintiffs incorporate by reference each allegation set forth in preceding paragraphs as if fully stated herein.

33.     At all relevant times, Defendant engaged in the business of researching, testing, developing, designing, manufacturing, labeling, marketing, selling, inspecting, distributing, and promoting its Aerosol Products, which are defective and unreasonably dangerous to consumers, including Plaintiffs, because they do not contain adequate warnings or instructions concerning the highly dangerous benzene they contain. These actions were under the ultimate control and supervision of Defendant.  At all relevant times, Defendant registered, researched, manufactured, distributed, marketed, and sold Aerosol Products aimed at a consumer market.

34.     Defendant researched, tested, developed, designed, manufactured, labeled, marketed, sold, inspected, distributed, and promoted, and otherwise released into the stream of commerce its Aerosol Products, and in the course of same, directly advertised or marketed the products to consumers and end users, including Plaintiffs, and therefore had a duty to warn of the risks associated with the use of these Products.

35.     At all relevant times, Defendant had a duty to properly test, develop, design, manufacture, inspect, package, label, market, promote, sell, and distribute, maintain, supply, provide proper warnings, and take such steps as necessary to ensure its Aerosol Products did not

cause users and consumers to suffer from unreasonable and dangerous risks.  Defendant had a continuing duty to warn Plaintiffs of dangers associated with its Aerosol Products. Defendant, as a manufacturer, seller, and distributor, is held to the knowledge of an expert in the field.

36.    At the time of manufacture, Defendant could have provided the warnings or instructions regarding the full and complete risks of its benzene containing Aerosol Products because it knew or should have known of the unreasonable risks of harm associated with the use of and/or exposure to such products.

37.    At all relevant times, Defendant failed and deliberately refused to investigate, study, test, or promote the safety or to minimize the dangers to users and consumers of its product and to those who would foreseeably use or be harmed by Defendant's Aerosol Products.

38.    Even though Defendant knew or should have known that its Aerosol Products posed a grave risk of harm, it failed to exercise reasonable care to warn of the dangerous risks associated with use and exposure to its Products.  The dangerous propensities of its Products, as described above, were known to Defendant, or Defendant could have reasonably known about them through appropriate research and testing by known methods, at the time it distributed, supplied or sold the Products.

39.    Defendant knew or should have known that its Aerosol Products created significant risks of serious bodily harm to consumers, as alleged herein, and Defendant failed to adequately warn or instruct consumers, i.e., the reasonably foreseeable users, of the risks of exposure to its products.

40.    Defendant failed to warn and has wrongfully concealed information concerning the dangerous level of benzene in its Aerosol Products, and further, has made false and/or misleading statements concerning the safety of the subject Aerosol Products.

41.     At all relevant times, Defendant's Aerosol Products reached the intended consumers, handlers, and users or other persons coming into contact with these products, including Plaintiffs, without substantial change in their condition as designed, manufactured, sold, distributed, labeled, and marketed by Defendant.

42.     Plaintiffs were exposed to Defendant's Aerosol Products without knowledge of their dangerous characteristics.

43.     At all relevant times, Plaintiffs were exposed to Defendant's Aerosol Products while using them for their intended or reasonably foreseeable purposes, without knowledge of their dangerous characteristics.

44.     Plaintiffs could not have reasonably discovered the defects and risks associated with these Aerosol Products prior to or at the time of using these products. Plaintiffs relied upon the skill, superior knowledge, and judgment of Defendant to know about and disclose serious health risks associated with using Defendant's products.

45.     Defendant knew or should have known that the information disseminated with their Aerosol Products were inadequate, failed to communicate adequate information on the dangers associated with the use of these Products which contained benzene, and failed to communicate warnings and instructions that were appropriate and adequate to render the products safe for their ordinary, intended and reasonably foreseeable uses.

46.     The information that Defendant did provide or communicate failed to contain relevant warnings, hazards, and precautions that would have enabled consumers such as Plaintiffs to avoid purchasing and using the products. Instead, Defendant disseminated information that was inaccurate, false, and misleading, and which failed to communicate accurately or adequately the comparative severity, duration, and extent of the risk of injuries with use of and/or exposure to the subject Aerosol Products, and concealed, downplayed, or otherwise suppressed, through

aggressive marketing and promotion, any information or research about the risks and dangers of using these products.

47.     This alleged failure to warn is not limited to the information contained on Aerosol Products' labeling. The Defendant was able, in accord with federal law, to comply with relevant state law by disclosing the known risks associated with its products through other non-labeling mediums, i.e., promotion, advertisements, public service announcements, and/or public information sources.  But the Defendant did not disclose these known risks through any medium. The ability to provide such warnings is not prohibited by any federal law.

48.     Had Defendant provided adequate warnings and instructions, and properly disclosed and disseminated the risks associated with its Aerosol Products, Plaintiffs could have avoided the risk of developing injuries and could have obtained or used alternative products. However, as a result of Defendant's concealment of the dangers posed by its Aerosol Products, Plaintiffs could not have averted their injuries.

49.     Defendant's conduct, as described above, was reckless.  Defendant risked the lives of Plaintiffs, including the lives of minor Plaintiffs, with knowledge of the safety problems associated with its Aerosol Products and suppressed this knowledge from the general public. Defendant made a conscious decision not to redesign, warn or inform the unsuspecting public prior to Valisure filing a Citizen Petition with the FDA asking it to recall certain batches of Defendant's Aerosol Antiperspirant Product due to the presence of dangerously high levels of benzene detected.  Defendant's reckless conduct warrants an award of punitive damages.

50.     Defendant's lack of adequate warnings and instructions accompanying its Aerosol Products was a substantial factor in causing Plaintiffs' injuries.

51.     As a direct and proximate result of the Defendant's failure to provide an adequate warning of the risks of its Aerosol Products, Plaintiffs have been injured.

## SECOND CAUSE OF ACTION

### (Breach of Express Warranty)

52.     Plaintiffs incorporate by reference each allegation set forth in preceding paragraphs as if fully stated herein.

53.     Plaintiffs and each Class member formed a contract with Defendant at the time Plaintiffs and the other Class members purchased the Defendant's Aerosol Products. The terms of the contract include the promises and affirmations of fact made by Defendant on its Aerosol Products packaging and through marketing and advertising, including the promise that benzene is one of the materials "we do not use as ingredients in any of our formulated products."[9] This labeling, marketing, and advertising constitute express warranties and became part of the basis of the bargain, and are part of the standardized contract that Defendant entered into with Plaintiffs and each Class member.

54.     Defendant expressly warranted that its Aerosol Products were fit for their ordinary use and also expressly warranted that its Aerosol Products were not adulterated or misbranded. Defendant's Aerosol Products did not conform to Defendant's express representations and warranties because they were not suitable for human application.

55.     At all times relevant, California has codified and adopted the provisions of the Uniform Commercial Code: Cal. Com. Code § 2313.

56.     At the time that Defendant marketed and sold its Aerosol Products, it recognized the purposes for which the products would be used, and expressly warranted the products were suitable for human application. These affirmative representations became part of the basis of the bargain in every purchase by Plaintiffs and each Class member,

---

[9] https://us.pg.com/ingredients/.

including but not limited to the express representation Defendant made that benzene is not an ingredient used in any of its products.

57.     Plaintiffs and Class members are natural persons who are reasonably expected to use, consume, or be affected by the adulterated and/or misbranded Aerosol Products manufactured and sold by Defendant.

58.     Defendant breached its express warranties with respect to its Aerosol Products because the products were not suitable for human application, did not comply with FDA standards, and were adulterated and misbranded.

59.     Plaintiffs and each Class member would not have purchased the Aerosol Products had they known the products contained benzene and were not suitable for human application.

60.     As a direct and proximate result of Defendant's breach of express warranty, Plaintiffs and other Class members have been injured and suffered damages in the amount of the purchase price of their Aerosol Products, and any consequential damages resulting from the purchases, in that the Aerosol Products they purchased were so inherently flawed, unfit, or unmerchantable as to have no market value.

## THIRD CAUSE OF ACTION

### (Breach of Implied Warranty)

61.     Plaintiffs incorporate by reference each allegation set forth in preceding paragraphs as if fully stated herein.

62.     Defendant was at all relevant times the manufacturer, distributor, warrantor and/or seller of the Aerosol Products.  Defendant knew or had reason to know of the specific use for which its Aerosol Products were purchased.

63.     At all times which Defendant marketed and placed its Aerosol Products into the stream of commerce, it knew of the particular purpose for which Plaintiffs and the Class members purchased the Aerosol Products -- to use safe and effective hygiene products including antiperspirant products and dry shampoo/conditioner products, which did not contain any dangerous carcinogens. Defendant also knew that consumers, including Plaintiffs and members of the Class, would have no ability or opportunity to determine the ingredients in the Aerosol Products, but instead would rely on Defendant's representations that the Aerosol Products it was manufacturing and selling were suitable for their particular purpose and free of dangerous carcinogens such as benzene.

64.     At all times, Plaintiffs and the Class members used the Aerosol Products in the manner that was intended for use and the defective Aerosol Products were not altered by Plaintiffs and the Class members.

65.     Defendant provided Plaintiffs and the Class members with an implied warranty that its Aerosol Products were merchantable and fit for the ordinary purposes for which they were sold and not dangerous or hazardous to its consumers' health.

66.     Further, as the intended consumers and ultimate users of the Aerosol Products, Plaintiffs and the Class members are intended third-party beneficiaries of any contracts between Defendant and any retailers from whom Plaintiffs obtained Aerosol Products, which contain the implied warranty of merchantability and to be fit for ordinary purposes, safe and not hazardous to one's health. Plaintiffs and the Class members, not any retailers, are the parties intended to benefit by any such contract because they are the people using the Aerosol Products in the manner intended.

67.     At all times relevant, California has codified and adopted the provisions of the Uniform Commercial Code: Cal. Com. Code § 2313.

68.     In breach of the implied warranty of merchantability, the Aerosol Products that Defendant provided to Plaintiffs and the Class members are not fit and suitable for their ordinary purpose because, inter alia, they contain benzene with the potential of causing serious injury and/or death. Defendant's Aerosol Products did not possess the basic degree of fitness for ordinary use due to the defects described herein. The defects are so basic that they render the Aerosol Products unfit for their ordinary purposes. As such, they are not merchantable.

69.     As a direct and proximate result of Defendant's breach, Plaintiffs and the Class members have suffered, and will continue to suffer, significant damages, loss and injury in an amount that will be established at trial. Plaintiffs and the Class members are entitled to legal and equitable relief against Defendant, including consequential damages, rescission, attorneys' fees, costs of suit, and other relief as appropriate.

## FOURTH CAUSE OF ACTION

### (Fraudulent Concealment)

70.     Plaintiff incorporates by reference each allegation set forth in preceding paragraphs as if fully stated herein.

71.     Defendant P&G Company had a duty to disclose material facts to Plaintiffs and the Class given their relationship as contracting parties and intended users of the Aerosol Products. Defendant also had a duty to disclose material facts to Plaintiffs and the Class, namely that it was in fact manufacturing, distributing, and selling harmful products unfit for human use, because Defendant had superior knowledge such that the transactions without this disclosure was rendered inherently unfair.

72.     Defendant possessed knowledge of these material facts as since at least mid-2020, numerous recalls of products shown to contain benzene put Defendant on notice that

adulterated and misbranded products were being investigated for contamination with carcinogens, including benzene.

73.     During this time, Plaintiffs, and members of the Class, were using the Aerosol Products without knowing they contained dangerous levels of benzene.

74.     Defendant failed to discharge its duty to disclose these materials facts.  In so failing to disclose these material facts to Plaintiffs and the Class, Defendant intended to conceal from Plaintiffs and the Class that they were purchasing and applying Aerosol Products with a harmful ingredient that is unfit for human use, and thus acted with scienter and/or an intent to defraud.

75.     Plaintiffs and the Class reasonably relied on Defendant's failure to disclose material facts insofar as they would not have purchased the defective Aerosol Products manufactured and sold by Defendant had they known that they contained unsafe levels of benzene.

76.     As a direct and proximate cause of Defendant's fraudulent concealment, Plaintiffs, and the Class, suffered damages and were injured.  Furthermore, and as a result of Defendant's willful and malicious conduct, punitive damages are warranted.

## FIFTH CAUSE OF ACTION

### (Negligent Misrepresentation)

77.     Plaintiffs reallege and incorporate here by reference each of the foregoing paragraphs, and further allege as follows.

78.     At all relevant times, Defendant designed, manufactured, packaged, labeled, marketed, advertised, promoted, supplied, distributed, sold and/or otherwise placed its Aerosol Products into the stream of commerce, and therefore owed a duty of reasonable care to avoid causing harm to those that used its Aerosol Products, such as Plaintiffs.

79.     Defendant was negligent, reckless, and careless and owed a duty to

Plaintiffs to make accurate and truthful representations regarding its Aerosol Products, Defendant breached its duty, thereby causing Plaintiffs and Class Members to suffer harm.

80.     Defendant represented to Plaintiffs via advertising, their websites, packaging, promotions, as well as by other means, that their Aerosol Products were safe, when in fact, these Aerosol Products contained benzene and were not suitable for human application.

81.     Additionally, Defendant represented to Plaintiffs that its Aerosol Products were safe for their intended use, when in fact, Defendant knew or should have known that its products were not safe for their intended purpose and should not have been used by consumers. Defendant intended for Plaintiffs to rely on these representations and each of these misrepresentations were material at the time they were made. In particular, each of the misrepresentations concerned material facts that were essential to the analysis undertaken by Plaintiffs as to whether they should purchase or use these Aerosol Products.

82.     Defendant knew or should have known that its representations were false and were negligently made without regard for their truth.

83.     Plaintiffs reasonably placed their trust and reliance in Defendant's representations that its Aerosol Products were as advertised, and were safe for use and application to their bodies, and were harmed as described herein. Plaintiffs' reliance on Defendant's representation was a substantial factor in causing Plaintiffs' harms.

84.     Furthermore, Defendant's acts and omissions as described herein were committed in reckless disregard of Plaintiffs' rights, interests, and well-being to enrich Defendant.

85.     Plaintiffs and the members of the class were injured as a direct and proximate result of Defendant's negligent misrepresentations regarding their products, as described herein.

## SIXTH CAUSE OF ACTION

### (Violation of *Business and Professions Code* sections 17200, *et seq.*)

86.     Plaintiffs reallege and incorporate here by reference each of the foregoing paragraphs, and further allege as follows.

87.     Plaintiffs, pursuant to *Business and Professions Code* section 17204, bring this cause of action on behalf of themselves and as a private attorneys general.

88.     *Business and Professions Code* section 17200, *et seq.*, also known as the Unfair Competition Law, defines "unfair business competition" to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. The Unfair Competition Law imposes strict liability.  Plaintiffs need not prove that Defendant intentionally or negligently engaged in unlawful, unfair or fraudulent business practices – but only that such practices occurred.

***"Unlawful" Prong***

89.     A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

90.     As detailed in Plaintiffs' Cause of Action below, the Consumer Legal Remedies Act, California *Civil Code* sections 1750 - 1784, prohibits a business from engaging in sales practices that are deceptive or misrepresentations when offering goods and services to the general public.

91.     Defendant's unlawful business practices are ongoing, and unless enjoined under *Business & Professions Code* section 17203, and/or under section 17535, are likely to continue to deceive other members of the general public at the expense of Defendant's competitors.

92.     Defendant violated Cal. Bus. & Prof. Code sections 17200, *et seq.* by engaging in unlawful, unfair, or fraudulent business acts or practices and unfair, deceptive, untrue, or misleading advertising, including:

        a.     Knowingly manufacturing, advertising, and distributing Aerosol Products touted as safe for use and application when, in reality, these Aerosol Products contain benzene;

        b.    Misrepresenting material information to consumers regarding Defendant's Aerosol Products and their ability to be safe to use by consumers;

        c.    Concealing material information from consumers regarding the fact that its Aerosol Products contain benzene, so that consumers would not know that these products pose a health risk to them; and

        d.    Using uniform, deceptive business practices, such as telling consumers via their website that the Aerosol Products involved do not contain benzene, without transparently disclosing that they do in fact contain benzene.

***"Unfair" Prong***

93.     A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications and motives of the practice against the gravity of the harm to the alleged victims.

94.     Defendant's business practices are unfair under the UCL because Defendant has acted in a manner that is immoral, unethical, oppressive, unscrupulous and/or substantially injurious to Plaintiffs and the Class Members. These business practices include failing to inform its customers about the true nature of its Aerosol Products, and engaging in a pattern or practice of concealing those facts and urging their customers to purchase more of their

Aerosol Products based on the false belief that the products remain safe to be used by consumers, thereby depriving consumers of sufficient information to make an informed decision when purchasing Aerosol Products. Further, the impact of the practice against Plaintiffs and the Class Members far outweighs any possible justification or motive on the part of Defendant. The impact on Plaintiffs and the Class Members has been described.  Defendant can have no possible justification for engaging in immoral, unethical and substantially injurious act of overcharging Plaintiffs and the Class Members through a misleading and deceptive conduct – selling benzene containing hygiene products that puts consumers at risk of potential health issues and/or even death. Furthermore, Plaintiffs and the Class Members could not have reasonably avoided this injury because they relied on Defendant's advertising as to the quality and characteristics of the products being sold, as all consumers who rely on the verity of product advertising must do. Defendant's false advertising is also violative of public policy, as expressed in the CLRA.

95. Specifically, Plaintiffs paid hefty prices overtime for Defendant's Aerosol Products, believing that they were safe to use for their hygiene use.

96. The harm to Plaintiffs and Class members outweighs the utility of Defendant's practices. There were reasonably available alternatives to further Defendant's legitimate business interests other than the misleading and deceptive conduct described herein.

***"Fraudulent" Prong***

97. A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the consuming public.

98. Defendant's acts and practices alleged above constitute fraudulent business acts or practices as they have deceived Plaintiffs into purchasing and using certain Aerosol Products which contain benzene, and are highly likely to deceive and have deceived members of the consuming public.

99.     Defendant's business practices, as alleged herein, also constitute fraudulent conduct because Defendant did not deliver the products it advertised.  Defendant's representations and omissions in California were material because they deceived reasonable consumers.

100.    Plaintiffs and Class Members did not know that the Aerosol Products they purchased and used contained benzene, a dangerous substance injurious to humans' health. Accordingly, Defendant should not have omitted and/or misrepresented the facts surrounding the true contents of its Aerosol Products.

101.    Defendant omitted and misrepresented material information pertaining to its Aerosol Products' true contents to defraud Plaintiffs by, among other things, convincing Plaintiffs and Class Members to purchase more of its products, and to otherwise ensure that Plaintiffs and Class Members would not discover Defendant's underlying fraud regarding its omissions and misrepresentations regarding its Aerosol Products.  As a result, Defendant violated Cal. Penal Code § 502.

102.    Defendant's fraud led to consumers paying for products that they would not have paid for if they knew the truth about the fact that these products contained benzene, a human carcinogen.

103.    As a direct and proximate result of Defendant's unfair, unlawful, and fraudulent acts and practices, Plaintiffs and Class Members were injured and lost money.  They did not receive the benefit of the bargain in purchasing the Aerosol Products, and they spent their own time and money dealing with purchasing safer alternatives. Additionally, Plaintiffs were harmed or placed at risk of imminent harm by using hygiene products containing benzene.

104.    Defendant acted intentionally, knowingly, and maliciously in violation of California's Unfair Competition Law.

105.    Plaintiffs and Class Members seek all monetary and non-monetary relief

allowed by law, including restitution of all profits stemming from Defendant's unfair, unlawful, and fraudulent business practices, declaratory relief, reasonable attorneys' fees and costs, injunctive relief, and other appropriate equitable relief.

106.    In prosecuting this action for the enforcement of important rights affecting the public interest, Plaintiffs also seek, in addition to damages, restitution and other equitable relief, to recover attorney fees under (i) section 1021.5 of the *Code of Civil Procedure*, and/or (ii) the "common fund" doctrine available to prevailing Plaintiffs who confer a benefit on the general public.

## SEVENTH CAUSE OF ACTION

### (Violation of California *Civil Code* section 1750, *et seq.*)

107.    Plaintiffs reallege and incorporate here by reference each of the foregoing paragraphs, and further allege as follows.

108.    Defendant is a "person" as defined by *Civil Code* section 1761(c).

109.    Plaintiffs and each member of the Class are "consumers" within the meaning of *Civil Code* section 1761(d).

110.    The Consumers Legal Remedies Act applies to Defendant's conduct because it extends to transactions that are intended to or result in the sale or lease of goods or services to consumers.  In accordance with the liberal application and construction of the CLRA, application of the CLRA to all class members is appropriate, given that Defendant's conduct as described herein originated from California, and consumers purchased or used the involved Aerosol Products in California.

111.    Defendant violated and continues to violate the CLRA by engaging in the following practices prescribed by *Civil Code* section 1770(a) in transactions with the members of the Class which were intended to result in, and did result in, the sale of products to Plaintiffs and

the Class Members in violation of Civil Code section 1770, including: a) representing that goods or services have characteristics and uses that they do not have; b) representing that goods or services are of a particular standard, quality, or grade when they are not; c) advertising goods or services with intent not to sell them as advertised; and d) representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

112.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

113.    Had Defendant disclosed to Plaintiffs and Class Members that its Aerosol Products contained benzene, in amounts surpassing those deemed safe by multiple regulatory bodies, Plaintiffs and the Class Members would have made different purchasing decisions.

114.    Had Defendant disclosed the truth, it would have been unable to continue in the same course of business. As such, Defendant represented that its Aerosol Products were safe for use by consumers. Plaintiffs and the Class Members acted reasonably in relying on Defendant's misrepresentations and omissions, the truth of which they could not have discovered.

115.    As a direct and proximate result of Defendant's violations of California Civil Code § 1770, Plaintiffs and Class Members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages. Such monetary and non-monetary damages have arisen from not receiving the benefit of the bargain in purchasing Defendant's Aerosol Products, and increased time and expense in having to purchase safer alternatives and to determine whether Plaintiffs have been negatively affected by using Defendant's Aerosol Products.

116.    Pursuant to *Civil Code* section 1782(d), the Class seeks a court order enjoining the above-described wrongful acts and practices of Defendant.

117.    Pursuant to *Civil Code* section 1782, Plaintiffs notified Defendant in writing in a

correspondence dated February 11, 2022, by certified mail of the particular violations of Civil Code section 1770 and the other violations as alleged herein and demanded that Defendant rectify the problems associated with the actions detailed above and give notice to all affected consumers of its intent to so act.

## EIGHTH CAUSE OF ACTION

### (Unjust Enrichment)

118.    Plaintiffs reallege and incorporate here by reference each of the foregoing paragraphs, and further allege as follows.

119.    As a result of Defendant's wrongful and deceptive conduct alleged herein, Defendant knowingly and voluntarily accepted and retained wrongful benefits in the form of money paid by Plaintiffs and members of the Class when they purchased the Aerosol Antiperspirant Products.

120.    In so doing, Defendant acted with conscious disregard for the rights of Plaintiffs and members of the Class.

121.    As a result of Defendant's wrongful conduct as alleged herein, Defendant has been unjustly enriched at the expense of, and to the detriment of, Plaintiffs and members of the Class.

122.    Defendant's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

123.    Under the common law doctrine of unjust enrichment, it is inequitable for Defendant to be permitted to retain the benefits it received, and is still receiving, without justification, from the false and deceptive labeling and marketing of the Aerosol Antiperspirant Products to  Plaintiffs and members of the Class.

124.    Defendant's retention of such funds under circumstances making it inequitable

to do so constitutes unjust enrichment.

125.     The financial benefits derived by Defendant rightfully belong to Plaintiffs and members of the Class.  Defendant should be compelled to disgorge in a common fund for the benefit of Plaintiff and members of the Class all wrongful or inequitable proceeds received by them.

126.     Accordingly, Plaintiffs and Class Members were damaged, and Defendant was unjustly enriched, given that they defrauded Plaintiffs into purchasing said Aerosol Products by not disclosing the fact that these products contained benzene.

127.     Furthermore, Defendant's conduct was willful, intentionally deceptive, and intended to cause economic injury to Plaintiffs and the Class.  Defendant is therefore liable to pay punitive damages.

128.     Plaintiffs and Class Members are entitled to damages in the amount Defendant was unjustly enriched, to be determined at trial.

## PRAYER FOR RELIEF

129.     Plaintiffs DONNEL COREY KENDALL, an individual, MARALE KURKEYERIAN, an individual, A.F., a minor and N.F., a minor, through their guardian ad litem MARALE KURKEYERIAN, JOSE FIGUEROA, an individual, HAIDEH DANESHNIA, an individual, ASSAL MIRZA MOHAMMADI, an individual, NASRIN KHODADADIAN, an individual and on behalf of all others similarly situated pray for relief and judgment against Defendant as follows:

(a)     An order certifying the Class and designating Plaintiffs DONNEL COREY KENDALL, an individual, MARALE KURKEYERIAN, an individual, A.F., a minor and N.F., a minor, through their guardian ad litem MARALE KURKEYERIAN, JOSE FIGUEROA, an individual, HAIDEH DANESHNIA, an individual, ASSAL MIRZA

MOHAMMADI, an individual, and NASRIN KHODADADIAN, an individual as Class Representatives and their counsel as Class Counsel;

(b)    Awarding Plaintiffs and the proposed Class members actual or compensatory damages according to proof;

(c)    Awarding restitution and disgorgement of all profits and unjust enrichment that Defendant obtained from Plaintiffs and the Class members as a result of their unlawful, unfair and fraudulent business practices described herein;

(d)    Awarding declaratory and injunctive relief as permitting by law or equity to individual Plaintiffs, including enjoining Defendant from continuing the unlawful practices set forth herein, and directing Defendant to identify, with Court supervision, victims of their misconduct and pay them all money they are required to pay;

(e)    Exemplary and punitive damages sufficient to punish and deter the Defendant and others from future wrongful practices;

(f)    Pre-judgment and post-judgment interest;

(g)    Awarding attorneys' fees and costs; and

(h)    Providing such further relief as may be just and proper.

### <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs demand trial by jury of all issues raised in this Complaint.

DATED: July 26, 2022                      **BEVERLY HILLS TRIAL ATTORNEYS, P.C.**

*/s/ Azar Mouzari*
Azar Mouzari, Esq.
Nilofar Nouri, Esq.
Attorneys for Plaintiff

*PLAINTIFFS' COMPLAINT*
*[CLASS-ACTION]*